IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL BRANDAN SMIRNOFF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-708-MHT-KFP |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Michael Brandan Smirnoff is before the Court with his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Doc. 1.[1] For the reasons discussed below, the Magistrate Judge RECOMMENDS that Smirnoff's § 2255 Motion be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

## I.     BACKGROUND

On April 19, 2019, Smirnoff pleaded guilty under a plea agreement to deprivation of civil rights resulting in bodily injury, in violation of 18 U.S.C. § 242.[2] Doc. 5-1. After a sentencing hearing on July 18, 2019, the district court sentenced Smirnoff to 22 months in

---

[1] References to document numbers of the pleadings, motions, and other materials in the Court file in this § 2255 action, as assigned on the docket sheet by the Clerk of Court, are designated as "Doc." References to document numbers assigned by the Clerk in the underlying criminal case (Case No. 2:18-CR-18419 419-MHT) are designated as "Crim. Doc." All pinpoint citations are to the pages of the electronically filed documents in the Court's CM/ECF filing system, which may not correspond to pagination on the hard copy of the document presented for filing.

[2] The case against Smirnoff arose from his assault of a handcuffed arrestee, "J.M.," who had surrendered to officers with the Tallassee Police Department, including Smirnoff, following the chase of a "four-wheeler" vehicle on the afternoon of March 29, 2016.

prison.[3] Doc. 5-2. Through new counsel retained after sentencing, Smirnoff filed a notice of appeal. Crim. Doc. 77. Counsel later withdrew the appeal at Smirnoff's direction. Doc. 1-2; Crim. Docs. 103, 104.

On September 23, 2019, Smirnoff, proceeding pro se, filed this § 2255 motion asserting the following claims:

1.   His counsel rendered ineffective assistance by (a) failing to investigate witnesses, review grand jury testimony and discovery materials, move to suppress evidence, and prepare adequately for sentencing; (b) advising Smirnoff to accept the government's plea offer; (c) failing to disclose the victim's arrest record at sentencing; (d) defaming Smirnoff's character at sentencing; and (e) failing to file an appeal.

2.   The government committed prosecutorial misconduct by referring to "inadmissible facts" from an unrelated case at Smirnoff's sentencing hearing.

3.   The district court erred in applying the "under color of law" and obstruction-of-justice enhancements in calculating Smirnoff's offense level under the sentencing guidelines.

4.   The district court failed to consider character letters submitted on Smirnoff's behalf at sentencing and imposed a sentence excessively disparate from sentences imposed on similarly situated defendants.

Doc. 1 at 4–8; Doc. 1-1 at 1–8.

## II.   DISCUSSION

### A.   Legal Standard

The grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1)

---

[3] The plea agreement contained a provision whereby Smirnoff waived his rights to appeal and file a § 2255 motion except to raise claims of ineffective assistance of counsel or prosecutorial misconduct.

violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. *See also McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The petitioner, not the government, bears the burden to establish that vacatur of the conviction or sentence is required. *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

### B.    Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's

performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

**1.    Counsel's Failure to Investigate Witnesses, Review Grand Jury Testimony and Discovery Materials, Move to Suppress Evidence, and Prepare Adequately for Sentencing**

Smirnoff claims his counsel rendered ineffective assistance by failing to investigate witnesses, review grand jury testimony and discovery materials, move to suppress evidence, and prepare adequately for sentencing. Doc. 1 at 4; Doc. 1-1 at 1–3. He

Smirnoff sets forth few facts and little argument supporting this claim. In apparent support for his allegation that counsel did not conduct adequate investigation or adequately prepare his case, Smirnoff points to counsel's comments to him, shortly after he was retained by Smirnoff, that the discovery materials in his case were "voluminous" and that counsel had "several other trials coming up." Doc. 1-1 at 2. Addressing Smirnoff's allegations of inadequate preparation and investigation, Smirnoff's counsel[4] states:

> I respectfully disagree with every one of Mr. Smirnoff's points under Ground One as they pertain to me. During my representation of Mr. Smirnoff, I met with him multiple times including after office hours to better accommodate his work schedule, I answered all questions he had pertaining to his case, and went over every document with him. I spoke with Mr. Smirnoff on numerous occasions giving him detailed information every step of the way during his case. If I was unable to speak to Mr. Smirnoff when he telephoned our office, my law clerk, Emma Mitchell, or another employee would return his call promptly. Not only myself, but my law clerk, Emma Mitchell, did extensive research on behalf of Mr. Smirnoff's case in order to defend Mr. Smirnoff with the utmost diligence.
>
> I alone went through pages of the grand jury testimonies, statements, and the discovery turned over by the Department of Justice. It was extremely voluminous, and I did have other cases going on at the time, but I did not let either of those things distract me from giving Mr. Smirnoff s case well more than adequate time to fully prepare and become knowledgeable for a more than complete and competent representation.

---

[4] Under the Court's orders, Smirnoff's former counsel filed an affidavit addressing Smirnoff's allegations of ineffective assistance of counsel. Docs. 3, 4.

Mr. Smirnoff makes a claim that I did not go through grand jury testimony that was provided to me. I would like to address this claim specifically. When Mr. Smirnoff hired me, I received grand jury testimony along with all the other discovery provided to me from the Federal Defender's office. Because of my experience as both a prosecutor and defense attorney, I knew there were specific rules pertaining to the grand jury testimony. I wanted to be extra cautious about how I handled this, so I reached out to U.S. Attorney Denise Simpson to learn exactly what I was allowed to disclose. I am sure Ms. Simpson either spoke with Judge Thompson's office or her supervisor, but I was told I was not allowed to disclose this testimony to anyone, including but not limited to, Mr. Smirnoff, my law partner, or my law clerk. I kept the grand jury testimony separate from all my other files so that it would not accidentally be looked at. I have thoroughly reviewed such testimony, and without divulging any information, I would like to represent to the Court that Mr. Smirnoff would not want such testimony to be addressed.

Doc. 4 at 3–4.

To prove prejudice based on counsel's inadequate investigation, a defendant must show what information would have been obtained from further investigation and show that it would have produced a different outcome. *United States v. Price,* 357 F. Supp. 2d 63, 67–68 (D.D.C. 2004). *See, e.g., Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (defendant could not show prejudice because he failed to demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome of the trial). Smirnoff provides no identifiable, specific facts indicating the beneficial information that would have been obtained through further investigation. He doesn't identify the witnesses his counsel should have investigated or the information useful to his defense that would have been forthcoming had those witnesses been investigated. Nor does Smirnoff explain how further review of grand jury testimony would have helped his defense, and he points to no potentially useful discovery materials that his counsel failed

to review. Smirnoff's general allegations here do not support his claim of ineffective assistance of counsel. He fails to show that his counsel's actions were professionally unreasonable or that he was prejudiced by counsel's performance.

Smirnoff cursorily asserts that his counsel was ineffective for failing to move to suppress evidence. Doc. 1-1 at 1. However, he sets forth no facts or arguments supporting this assertion. He suggests no grounds upon which a suppression motion might have been made and does not even argue what evidence should have been suppressed. A defendant alleging that his counsel was ineffective for failing to move to suppress evidence must demonstrate that, if made, the suppression motion would have been meritorious and the result of the proceeding would likely have been different. *United States v. Matos*, 905 F.2d 30, 33 (2d Cir. 1990). *See, e.g., DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (defendant alleging ineffective assistance for failure to file motion most show that motion had merit). Smirnoff fails to establish prejudice from his counsel's failure to move to suppress evidence. He also fails to show that counsel's actions in this regard were professionally unreasonable.

Smirnoff argues that his counsel's alleged lack of preparation caused counsel to perform deficiently at his sentencing, particularly by failing to argue facts that would have been "useful in mitigation." Doc. 1-1 at 2–3. Here, Smirnoff points to his counsel's failure to object at sentencing to the prosecutor's description of the victim J.M.'s injuries. *Id*. at 3. He argues that counsel should have objected to the prosecutor's statements that J.M.'s injuries "were not serious" but that J.M. "did spend multiple days in the hospital because he was a hemophiliac and doctors were afraid that the assault . . . could trigger internal

bleeding that could be very serious to him. Thankfully, that did not happen." Doc. 1-1 at 3; *see* Doc. 5-2 at 21. According to Smirnoff, after the prosecutor made these statements, his counsel should have introduced a recording from an examining physician who, Smirnoff says, stated that J.M.'s injuries weren't potentially fatal, that hemophiliacs are kept for evaluation as a matter of policy, and that J.M. didn't require any medical treatment for his injuries. Doc. 1-1 at 3.

As the government argues in its Response to Smirnoff's claim, Smirnoff's proposed objection and the physician's observations would have added "little, if anything, to the information conveyed by the [prosecutor]—let alone establish[ ] a foundation for deficient performance." Doc. 5 at 10. The gist of the prosecutor's statements was that J.M., as a hemophiliac, was kept under observation at the hospital for several days after the incident, and fortunately J.M.'s injuries turned out not to be serious. There is no reasonable likelihood that the district court misunderstood the seriousness of J.M.'s injuries because of the prosecutor's statements. And there was little reason for Smirnoff's counsel to object to the prosecutor's statements or to reply in kind. Smirnoff demonstrates no prejudice from his counsel's failure to do so, and he does not show deficient performance by counsel.

For the reasons discussed, Smirnoff is entitled to no relief on his claim of ineffective assistance of counsel.

## 2.    Counsel's Advice to Accept Plea Offer

Smirnoff claims his counsel was ineffective for advising him to accept the government's plea offer. Doc. 1 at 4; Doc. 1-1 at 2. According to Smirnoff, he "was not completely aware of what he was signing into" when he pled guilty. Doc. 1-1 at 2. He says

his counsel convinced him to "take the plea bargain" because "the prosecutors agree[d] to

the low end of the guidelines and Mr. Smirnoff would only be looking at probation." *Id*.

Responding to this claim, Smirnoff's counsel states:

> When Mr. Smirnoff was first indicted for his crimes, he was charged with two (2) counts of Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242 and one (1) count of Obstruction of Justice by Falsifying a Document in violation of 18 U.S.C. § 1519. Mr. Smirnoff had an attorney before he hired me, so I assume that he was not pleased with the work being done since that attorney was fired. In fact, during my representation of Mr. Smirnoff, I received . . . a better plea offer than what was originally offered to his prior attorney. I highly encouraged Mr. Smirnoff to accept the plea agreement that was extended to him due to the evidence weighing against him including, but not limited to, the videos of the incidents and the Grand Jury testimony. I believed the plea agreement to be extremely fair and generous. Before the plea hearing for Mr. Smirnoff, I extensively discussed the plea agreement and the repercussions of a guilty plea to Mr. Smirnoff and made him aware of the rights he was giving up. I went over multiple times what the plea included, what was being waived, and made sure that Mr. Smirnoff knew and had time to read every word of the plea agreement. During the plea hearing, Honorable Judge Doyle went over the plea agreement and asked Mr. Smirnoff multiple time if he understood his actions. Mr. Smirnoff never made any indications to the Court, myself, or my staff that he did not understand what he was agreeing to.

Doc. 4 at 1–2.

The *Strickland* standard for claims of ineffective assistance of counsel applies to

guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective

assistance in this context must establish that counsel's performance was deficient (i.e.,

professionally unreasonable) and that counsel's deficient performance "affected the

outcome of the plea process." *Id*. at 59. To establish prejudice, then, a petitioner "must

show that there is a reasonable probability that, but for counsel's errors, he would . . . have

pleaded [not] guilty and would . . . have insisted on going to trial." *Id*. A mere allegation

by a defendant that he would have insisted on going to trial but for counsel's errors will not establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine if the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

Smirnoff does not assert that he would have insisted on going to trial but for his counsel's allegedly deficient performance in advising him to accept the government's plea offer. Absent such an assertion, he fails to demonstrate the prejudice required to sustain his claim of ineffective assistance of counsel. *See Hill*, 474 U.S. at 59.

Allegations of a § 2255 petitioner, even when accompanied by the petitioner's affidavit, are insufficient to mandate an evidentiary hearing in the face of a record contradicting the petitioner. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014). Given the strong evidence against Smirnoff, where his assault of J.M. was captured on videotape, this Court cannot say that Smirnoff would have chosen to go to trial absent the alleged professionally unreasonable actions of his counsel. Smirnoff accepted a favorable plea offer that dismissed two of the three counts against him,[5] let him receive credit for acceptance of responsibility, and resulted in his receiving a below-guidelines sentence. He suggests no plausible defense to the charges against him. Under the circumstances, Smirnoff fails to show that a decision to reject the plea deal in his case would have been rational or likely. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Looking at the circumstances surrounding the plea, *Miller*, 262 F.3d at 1072, the Court

---

[5] A second § 242 count and an obstruction-of-justice count were dismissed under the plea agreement.

finds no reasonable probability that Smirnoff would have opted for a trial but for counsel's alleged errors.

Further, Smirnoff's apparent belief that the government's plea offer was not the best he could do fails to create any inference that a more favorable plea offer existed. Indeed, there is no evidence that a more favorable plea agreement was obtainable. A petitioner fails to establish he was prejudiced by his counsel's failure to negotiate a more favorable plea agreement with nothing more than bald assertions that such an agreement might have been possible. *See Cummings v. United States*, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013); *Guyadeen v. United States*, 2006 WL 1360894, at *2–3 (M.D. Fla. May 17, 2006) (finding no prejudice because, "even assuming [petitioner's] counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced."); *Freeman v. United States*, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011) (stating that "[a]ll [m]ovant shows is that [he] would have preferred a more favorable plea agreement—such a showing could be made by almost anyone who has entered into a guilty plea.").

Finally, Smirnoff acknowledged at the change of plea hearing that he had discussed the plea agreement with his counsel and that he understood he could receive a sentence that "may be different from any estimate that your attorney may have given you." Doc. 5-1 at 9. Smirnoff further affirmed to the magistrate judge that, other than the plea agreement, no one had made any assurances to him to get him to plead guilty. *Id*. at 6. Smirnoff also averred that he was fully satisfied with counsel's representation and advice. *Id*. at 5. There is a strong presumption that the statements made by the defendant during the guilty plea

colloquy are true. *Blackledge v. Allison*, 432 U.S. 63, 73–74 (1977); *Winthrop-Redin*, 767 F.3d at 1216. Here, Smirnoff fails to meet his burden to rebut his own sworn statements that he understood his plea agreement, his possible sentence, and the consequences of pleading guilty.

For the reasons discussed, Smirnoff is entitled to no relief on his claim of ineffective assistance of counsel.

### 3.      Counsel's Failure to Disclose Victim's Arrest Record

Smirnoff claims his counsel was ineffective for failing to disclose the victim J.M.'s arrest record to the district court at sentencing. Doc. 1 at 4; Doc. 1-1 at 2–3.

As the government argues in its response to this claim (Doc. 5 at 12), J.M.'s arrest record would not have been admissible at a trial, *see* Fed. R. Crim. P. 404(a), and it wasn't relevant to Smirnoff's sentencing. Smirnoff didn't know about J.M.'s arrest record at the time of the incident. His counsel argued at sentencing that J.M.'s actions just before he was assaulted—his reckless driving of a "four-wheeler" vehicle and leading of police, including Smirnoff, on a high-speed chase—should be considered by the district court as mitigating circumstances for Smirnoff's conduct, warranting a downward variance. Doc. 5-2 at 12–19. Video evidence introduced at sentencing showed that J.M. was handcuffed and not resisting arrest when Smirnoff body-slammed him. Reference to J.M.'s arrest record could not have affected any assessment of Smirnoff's conduct and was irrelevant in determining whether a downward variance was warranted. Counsel did not perform deficiently by failing to disclose J.M.'s arrest record, and Smirnoff is entitled to no relief on this claim.

### 4. Counsel's Defamation of Smirnoff's Character

Smirnoff claims his counsel was ineffective for "defaming" his character at the sentencing hearing. Doc. 1 at 4; Doc. 1-1 at 4.

In making this claim, Smirnoff cites to a portion of the sentencing hearing where his counsel argued for a downward variance based on J.M.'s fleeing from the police. Counsel argued that J.M.'s conduct, while "not justifying [the assault]," should "lessen[ ] the punishment." Doc. 5-2 at 14. Counsel then acknowledged that Smirnoff had body-slammed J.M. and conceded that "he didn't do it once. He does it twice, which is sickening, to be honest, that a police officer is doing that." *Id*. Smirnoff considers this concession by counsel to have defamed his character. Doc. 1-1 at 4.

Counsel's decision to acknowledge Smirnoff's conduct while arguing for a downward variance based on the context in which that conduct occurred was a professionally reasonable strategic decision. Such strategic choices are virtually unchallengeable. *See Strickland*, 466 U.S. at 690. There is, moreover, no evidence that the Smirnoff was prejudiced by his counsel's concession. The district court granted a downward variance and imposed a below-guidelines sentence. Smirnoff is entitled to no relief on this claim.

### 5. Counsel's Failure to File Appeal

Smirnoff claims his counsel rendered ineffective assistance by failing to file an appeal on his behalf after he asked counsel to do so. Doc. 1 at 4; Doc. 1-1 at 4–5.

Smirnoff's counsel contests this allegation in his affidavit, stating that, "to the best of my recollection, Mr. Smirnoff never requested that I appeal his case." Doc. 4 at 5. In

any event, it is unnecessary to resolve this disputed factual question because Smirnoff retained new counsel shortly after his sentencing, and his new counsel filed a timely notice of appeal on his behalf. Doc. 77. The appeal was docketed in the Eleventh Circuit. *See* Appeal No. 19-12996. At Smirnoff's direction, his appellate counsel later withdrew his appeal. *See* Doc. 1-2; Crim. Docs. 103, 104. Because the attorney retained by Smirnoff after sentencing filed a timely appeal on his behalf, Smirnoff was not deprived of an appeal. Consequently, he suffered no prejudice from previous counsel's alleged failure to comply with his request that an appeal be filed.

### C.    Prosecutorial Misconduct: Reference to Unrelated Case

Smirnoff claims that the government committed prosecutorial misconduct by referring to "inadmissible facts" from an unrelated case at his sentencing hearing. Doc. 1 at 5; Doc. 1-1 at 5–6.

This issue, as a substantive claim, is arguably procedurally defaulted because Smirnoff did not raise it in the trial court or on direct appeal. *Lynn*, 365 F. 3d at 1234; *see also McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). However, Smirnoff suggests that his counsel was ineffective for failing to argue this issue at sentencing. Doc. 1-1 at 2–3. Because ineffective assistance of counsel may constitute "cause" excusing a procedural default, *see Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989), the Court will consider the merits of Smirnoff's substantive claim and, in so doing, assess whether he proves ineffective assistance by his counsel.

Smirnoff alleges that at his sentencing hearing the prosecutor improperly referred to facts from an unrelated case involving an officer with the Tuskegee Police Department,

Alex Huntley, who, like Smirnoff, was convicted of violating 18 U.S.C. § 242 for assaulting a handcuffed arrestee during an incident that occurred in Tuskegee. *See United States v. Huntley*, Case No. 3:18cr8-WKW. Doc. 1-1 at 2–3, 5–6. According to Smirnoff, the prosecutor, when arguing to the district court about the reactions of the police officers who witnessed Smirnoff's conduct, mistakenly referred to facts from Huntley's case, specifically, by discussing the actions of a police "recruit" who witnessed and videorecorded the incident and submitted the videotape to the FBI. Doc. 1-1 at 6. Smirnoff maintains that, unlike in Huntley's case, no police recruits were present during the incident in which he was involved, and the videotape of his incident was not made by a recruit or submitted to the FBI by a recruit. *Id*. He asserts instead that a more senior police officer with the Tallassee Police Department "turned over the evidence" in his case to the State Bureau of Investigation ("SBI"). *Id*.

Smirnoff's focus on whether a police "recruit" witnessed and recorded his assault of J.M. is irrelevant. The prosecutor did not refer to "recruits." Rather, in responding to defense counsel's argument that Smirnoff should receive a downward variance because he was provoked by J.M.'s actions, the prosecutor pointed out that the other officers at the scene, faced with the same "provocation," took J.M. into custody without using excessive force and considered Smirnoff's actions to be improper. The prosecutor stated:

> [T]he other officers who were there recognized this [Smirnoff's conduct] was wrong. There was one officer who was on the scene, was being trained—it was his first—he was on a ride-along to learn how to be a patrol officer. It was his first day, his first ride-along out in the field. And this is what he saw about what happened and he immediately knew it was wrong, and he went to the FBI and told them that he was disturbed by this. A guy with one day

of experience. So I don't believe it's right that the victim's conduct here significantly provoked what the defendant did, given his level of experience.

Doc. 5-2 at 21.

Contrary to Smirnoff's assertions, the prosecutor's statements did not refer to facts from Huntley's case. They referred instead to a corrections officer, Jonathan Floyd, who was on a ride-along with a Tallassee Police Department patrol officer when he witnessed Smirnoff's assault of J.M. Floyd told investigators[6] that, even though he had not yet attended the police academy and had never worked on patrol before the day of the assault, he believed Smirnoff's actions were wrong as they happened.

In his statements at sentencing, the prosecutor accurately described Floyd's background and response to the incident involving Smirnoff. He did not call Floyd a "recruit" or claim that Floyd was the officer who videotaped Smirnoff's assault of J.M. Floyd's observations of Smirnoff's conduct touched on matters relevant to the district court's sentencing determination, particularly where Smirnoff was seeking a downward variance based on the alleged extenuating circumstances under which his conduct occurred. *See* 18 U.S.C. § 3553(a)(1) (requiring sentencing courts to consider "the nature and circumstances of the offense"). The prosecutor's statements were supported by the record and were relevant to the district court's analysis of § 3553(a) factors. Smirnoff fails to prove prosecutorial misconduct, and his counsel was not ineffective for failing to raise that a claim. Smirnoff is entitled to no relief.

---

[6] It appears that Floyd may have first reported the matter to the SBI and that the SBI then furnished copies of its investigation to the FBI. *See, e.g.*, Doc. 6-1 at 2–3. In any event, it makes no difference, for purposes of assessing Smirnoff's claim, which of the two investigative agencies received Floyd's report.

### D. Improper Application of "Under Color of Law" and Obstruction-of-Justice Enhancements

Smirnoff claims that the district court incorrectly applied two enhancements in calculating his offense level under the sentencing guidelines. Doc. 1 at 7; Doc. 1-1 at 6–8. Specifically, Smirnoff argues that the district court erred by applying a six-level increase in his offense level because the offense was committed "under color of law," *see* U.S.S.G. § 2H1.1(b)(1)(B), and a two-level increase in his offense level for obstruction of justice, *see* U.S.S.G. § 3C1.1. Doc. 1-1 at 6-8.

Smirnoff's claims, like his prosecutorial misconduct claim, are arguably procedurally defaulted because they were not raised in the trial court or on direct appeal. Further, the waiver provision in Smirnoff's plea agreement bars him from challenging his conviction and sentence except on grounds of prosecutorial misconduct and ineffective assistance of counsel. In his reply to the government's response to his § 2255 motion, Smirnoff maintains that his counsel was ineffective for failing to challenge the district court's application of the two enhancements in calculating his offense level. Doc. 8-1 at 13. Under the circumstances, because Smirnoff asserts ineffective assistance of counsel, this Court will consider the merits of his substantive claims and, in so doing, assess whether he proves ineffective assistance by his counsel.

### "Under Color of Law" Enhancement

Smirnoff argues that the district court's six-level enhancement under U.S.S.G. § 2H1.1(b)(1)(B) for committing his offense while acting "under color of law" impermissibly double counted his conduct because he was convicted of an offense,

violating 18 U.S.C. § 242, that included acting under color of law as an element.[7] Doc. 1 at 7; Doc. 1-1 at 6–8.

Impermissible double counting occurs where a court considers the same factor both in setting the base offense level and in applying a specific offense characteristic that enhances that level. *See United States v. Hudson*, 972 F.2d 504, 506–07 (2d Cir. 1992); *see also United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) ("Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."). In assessing a claim of double counting, the Eleventh Circuit presumes that the Sentencing Commission intended to apply separate guideline sections cumulatively, unless specifically directed otherwise. *Matos-Rodriguez*, 188 F.3d at 1310.

Section 2H1.1, the guideline applicable to, among other crimes, § 242 convictions, applies to all civil rights violations, whether or not they are committed by public officials

---

[7] Title 18 U.S.C. § 242 provides:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

or under color of law. For example, § 2H1.1 provides the applicable guidelines for violations of 18 U.S.C. §§ 245(b), 246, 247, 248, and 1091 as well as 42 U.S.C. § 3631—none of which require that the defendant have committed a civil rights crime in his official capacity or under color of law. Smirnoff's total offense level was calculated by determining his base offense level under § 2H1.1(a), subtracting applicable reductions, and adding any applicable enhancements, including the "under color of law" specific offense characteristic enhancement in § 2H1.1(b)(1)(B). An "under color of law" element, however, is not a component of determining a defendant's base offense level under § 2H1.1(a). In Smirnoff's case, § 2H1.1(a) established a base offense level of 10 because his offense "involved the use or threat of force against a person." *See* § 2H1.1(a)(3)(A). Section 2H1.1(b)(1)(B) then provided for a six-level specific offense characteristic enhancement because the offense was committed "under color of law."

Because the "under color of law" element was not a component of determining Smirnoff's base offense level, Smirnoff's double-counting argument lacks merit. That is, the district court did not consider the same factor ("under color of law") both in setting Smirnoff's base offense level and in applying the special offense characteristic that enhanced that level. *See Hudson*, 972 F.2d at 506–07. Thus, Smirnoff fails to show that his counsel performed deficiently regarding this matter or that he was prejudiced by counsel's performance. This claim entitles Smirnoff to no relief.[8]

---

[8] It is worth noting that the courts that have considered claims like Smirnoff's have uniformly rejected the argument that application of the "under color of law" enhancement to defendants convicted of § 242 violations constitutes impermissible double counting. *See, e.g., United States v. Volpe*, 224 F.3d 72, 76–77 (2d Cir. 2000); *United States v. Webb*, 214 F.3d 962, 965 (8th Cir. 2000); *United States v. Hickman*, 766 F.

<u>Obstruction-of-Justice Enhancement</u>

Smirnoff argues that the two-level obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 should not have been applied to him because it was based on conduct that he says he "vehemently denied." Doc. 1 at 7; Doc. 1-1 at 8.

Section 3C1.1 provides for a two-level enhancement where a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and the obstructive conduct "related to the defendant's offense of conviction and any relevant conduct[.]" U.S.S.G. § 3C1.1.

Here, as reflected in Smirnoff's presentence investigation report ("PSR"), the Probation Office determined that the § 3C1.1 was warranted because Smirnoff had obstructed the investigation into his actions by directing a subordinate officer to write a false report concealing those actions. *See* Crim. Doc. 73 at 5, 6 (PSR, ¶¶ 12, 19). This determination was supported by statements from multiple witnesses. *Id*. At sentencing, Smirnoff's counsel reaffirmed to the district court that Smirnoff had directed a subordinate officer to write a false report:

> THE COURT: Okay. Now, your client also—and I know this charge was dismissed[9]—well, actually, it is in the PSR—advised another officer to write a misstatement, did he not?

---

App'x 240, 250–51 (6th Cir. 2019); *United States v. Livoti*, 22 F. Supp. 2d 235, 246–47 (S.D.N.Y. 1998), aff'd, 196 F.3d 322 (2d Cir. 1999).

[9] Smirnoff was originally charged with two counts of deprivation of civil rights under color of law in violation of 18 U.S.C. § 242 and one substantive count of obstructing justice by falsifying a document in violation of 18 U.S.C. § 1519. One of the § 242 counts and the substantive obstruction of justice count were dismissed as part of his plea agreement. Crim. Doc. 50 at 3.

[SMIRNOFF'S COUNSEL]: Yes, sir.

Doc. 5-2 at 23.

Smirnoff's claim that he "vehemently denied" directing an officer to write a false report, *see* Doc. 1-1 at 8, conflicts with the record and furnishes no basis to overturn the district court's application of the obstruction-of-justice enhancement. Smirnoff offers only his unsupported, after-the-fact denial of his having committed the acts that were the basis of the enhancement. Essentially, he attempts an end run around his procedural default and the waiver provision in his plea agreement by framing this claim in terms of ineffective assistance of counsel. However, he fails to show that the enhancement was improperly applied to him and thus fails to show deficient performance by his counsel or resulting prejudice. This claim entitles Smirnoff to no relief.

### E.    Character Letters and Disparate Sentence

Finally, Smirnoff argues that the district court failed to consider character letters submitted on his behalf at sentencing and imposed a sentence excessively disparate from sentences imposed on similarly situated defendants. Doc. 1 at 8; Doc. 1-1 at 8.

Smirnoff's claims here are procedurally defaulted because they were not raised in the trial court or on direct appeal, and Smirnoff neither asserts nor demonstrates cause excusing his procedural default. *Lynn*, 365 F. 3d at 1234; *McCoy,* 266 F.3d at 1258. Thus, the claims are subject to no further review.

Moreover, the waiver provision in the plea agreement bars Smirnoff from presenting these claims in his § 2255 motion. The written plea agreement contained a provision whereby Smirnoff waived his rights to appeal and file a § 2255 motion except to raise

claims of ineffective assistance of counsel and prosecutorial misconduct. Crim. Doc. 50 at 6. An appeal waiver or collateral-attack waiver is valid if a defendant enters it knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350–55 (11th Cir. 1993). To enforce such a waiver, the government must show either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351. The transcript of Smirnoff's guilty plea hearing reflects that the magistrate judge specifically questioned Smirnoff about the waiver provision and confirmed that Smirnoff understood its terms. Doc. 5-1 at 9. Thus, the record shows—and Smirnoff does not disprove—that the collateral-attack waiver in the plea agreement was knowing and voluntary. *Bushert*, 997 F.2d at 1351. Smirnoff's claims here do not fall under the waiver's carveout allowing claims of ineffective assistance of counsel and prosecutorial misconduct. Consequently, Smirnoff's claims regarding character letters and disparate sentencing are barred by the waiver provision.

In any event, Smirnoff fails to show that these claims are meritorious. The district court made findings on the record explaining its consideration of the § 3553 factors, heard from all five of Smirnoff's mitigation witnesses, and imposed a sentence below the bottom of the recommended guidelines range. Moreover, Smirnoff does not establish that the district court failed to consider his character letters. Finally, Smirnoff presents no evidence showing that his sentence was excessively disparate from sentences imposed on similarly situated defendants. To prevail on a claim regarding alleged sentencing disparities, a

petitioner must show not only a disparity in sentencing but that he was similarly situated to another defendant. *United States v. McNair*, 605 F.3d 1152, 1232 (11th Cir. 2010). "That requires identifying (1) a specific defendant, (2) with a similar record to the defendant being sentenced, (3) who has been found guilty of similar criminal conduct." *United States v. Espinoza*, 550 F. App'x 690, 694 (11th Cir. 2013). Smirnoff does none of this. For these reasons, Smirnoff's claims fail.

## III.   CONCLUSION

The undersigned Magistrate Judge RECOMMENDS that Smirnoff's § 2255 motion be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

Further, it is ORDERED that by **June 6, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec.,*

*Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 23rd day of May, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE